UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

---

CHRISTIAN BAKSH by his Guardian,
DEBBIE BAKSH,                                    **COMPLAINT**

     Plaintiff                                Hon.

v.

                                      File No:

ROBERT GORDON, Director, Michigan
Department of Health and Human Services,
in his official capacity; MICHIGAN DEPARTMENT
OF HEALTH AND HUMAN SERVICES;
CONNIE CONKLIN, Executive Director of
Livingston County Community Mental Health,
in her official capacity; LIVINGSTON COUNTY
COMMUNITY MENTAL HEALTH;
JAMES COLAIANNE, Interim Chief Executive Officer,
Community Mental Health Partnership of Southeast
Michigan, in his official capacity; and COMMUNITY
MENTAL HEALTH PARTNERSHIP OF SOUTHEAST
MICHIGAN,

     Defendants.

---

Simon Zagata (P83162)
Mark Cody (P42695)
Michigan Protection and Advocacy Service, Inc.
Attorneys for Plaintiff
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
(517) 487-1755

---/

**COMPLAINT**

Plaintiff, through counsel, states:

## INTRODUCTION

1. Christian Baksh, by his mother and guardian, Debbie Baksh, brings this action pursuant to 42 U.S.C. § 1983 based on violations of rights expressly conferred by the Social Security Act; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 et seq.

2. Christian Baksh, Plaintiff, a 20-year old Medicaid beneficiary with developmental disabilities, has relied on Medicaid community living arrangement services to live and participate in the community since 2005.

3. While Defendants have authorized and deemed these community living support (CLS) services medically necessary, Defendants have only provided the services intermittently.

4. Plaintiff has been left without medically necessary services for stretches of months due to Defendants' failure to provide services.

5. Defendants have failed to provide Plaintiff with his medically necessary CLS services because Defendants do not maintain a provider network with the capacity to meet the needs of the region.

6.     Plaintiff brings this action pursuant to 42 U.S.C. § 1983 based on violations of his rights expressly conferred by the Social Security Act. These rights include the right to have medical assistance furnished to Plaintiff with reasonable promptness under 42 U.S.C. § 1396a(a)(8) and 42 U.S.C. § 1396a(a)(10); and Plaintiff's right to have services provided to him in the amount, duration, and scope required to meet his needs as required under 42 C.F.R. § 440.230(b).

7.     Plaintiff further brings this action pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 et seq.

## JURISDICTION AND VENUE

8.     This action arises under 42 U.S.C. § 1983; 29 U.S.C. § 794; and 42 U.S.C. § 12131 et seq.

9.     Jurisdiction is conferred by 28 U.S.C. §§ 1331, 1343(a)(3)(4).

10.    Declaratory and injunctive relief are authorized pursuant to 28 U.S.C. §§ 1343, 2201, 2202; 29 U.S.C. 794a; 42 U.S.C. § 1988; and 42 U.S.C. §12133.

11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as all of the events complained of below occurred in the Eastern District, Livingston County, Michigan.

12.     Plaintiff and Defendant Livingston County Community Mental Health (LCCMH) both reside and/or do business in the Eastern District, Livingston County, Michigan.

## PARTIES

13.     Plaintiff is a qualified individual with a disability, diagnosed with Cerebral Palsy and other developmental disabilities. His impairments substantially limit his ability to care for himself and live independently.

14.     At all relevant times Plaintiff has been and continues to be a Medicaid beneficiary.

15.     Plaintiff brings this action through his mother and guardian, Debbie Baksh.

16.     Plaintiff resides with his mother, Debbie Baksh, in Livingston County, Michigan, which is in this venue.

17.     Defendant, Livingston County Community Mental Health (LCCMH), was established by Public Act 258 of 1974. The "purpose of a community mental health services program shall be to provide a comprehensive array of mental health services appropriate to conditions of individuals who are located within its geographic

service area, regardless of an individual's ability to pay." MCL 330.1206.

18.  Defendant, LCCMH, is required to provide mental health services to adults living in Livingston County with serious mental illness, children with severe emotional disturbance, and individuals with developmental disabilities.

19.  Defendant Constance Conklin is the Executive Director of LCCMH and is being sued in her official capacity.

20.  Defendant Robert Gordon is the Director of Michigan Department of Health and Human Services (MDHHS), the agency designated as the single state agency responsible for administering and implementing Michigan's Medicaid program. 42 U.S.C. § 1396a(a)(5).

21.  As Director, Mr. Gordon is responsible for ensuring Michigan's Medicaid program is administered and implemented consistent with the requirements of the Medicaid Act.  Mr. Gordon is being sued in his official capacity.

22.  Defendant James Colaianne is the Interim Chief Executive Officer of the Community Mental Health Partnership of Southeast Michigan (CMHPSM), an agency created by state law. MCL 330.1204b. Mr. Colaianne is being sued in his official capacity.

23.   The CMHPSM is a specialty prepaid health plan, considered a Medicaid managed care organization, under MCL 400.109f. A Medicaid managed care organization "provides or arranges for services for enrollees." 42 U.S.C. § 1396u-2(a)(1)(B).

24.   MDHHS is a state department operating Medicaid, an activity or program, a recipient of federal financial assistance, and a public entity, as those terms are defined under 29 U.S.C. § 794 and 42 U.S.C. § 12131.

25.   CMHPSM and LCCMH are public entities administering Medicaid, a program or activity, for the purposes of 29 U.S.C. § 794 and 42 U.S.C. § 12131.

## FACTS

26.   Medicaid is a program created by federal law that provides the states with financial assistance to furnish medical care to needy individuals. Participating states administer the Medicaid program in compliance with federal law.

27.   States submit a plan for how the Medicaid program will be administered, called the State Plan. 42 U.S.C. § 1396a(a).

28.   The State Plan contains and describes the nature and scope of the State's Medicaid program. 42 C.F.R. § 430.10.

29.   Michigan's State Plan includes the provision of home and community-based services to approved Medicaid beneficiaries under a waiver, "granted under 42 C.F.R. Part 441, subpart G," who would otherwise require services in a facility. Attachment 2.2-A to the Michigan State Plan. This waiver is called the Habilitation Supports Waiver (Hab Waiver) in Michigan.

30.   Michigan elected, applied, and was approved to receive funding to furnish waiver services under 42 U.S.C. § 1396n to assist individuals with developmental disabilities with activities of daily living necessary to permit them to live in their own home or rental unit furnished in a community supported living arrangement setting.

31.   Waivers are granted to "permit states to offer, under a waiver of statutory requirements, an array of home and community-based services that an individual needs to avoid institutionalization." 42 C.F.R. § 441.300.

32.   Federal law lists the type of community living arrangement services which must be offered under the waiver. 42 U.S.C. § 1396u and 42 C.F.R. § 440.180.

33.   Michigan chose to make all Medicaid home and community-based community living arrangement services under 42 U.S.C. § 1396u and

42 C.F.R. § 440.180 mandatorily available to individuals on the Hab Waiver. MCL 400.109c.

34. The definition of community supported living arrangement services includes "approved services which assist a developmentally disabled individual in activities of daily living necessary to permit that individual to live in their own apartment in a community supported living arrangement setting." 42 U.S.C. § 1396u. It also includes personal assistance and "support services necessary to aid an individual to participate in community activities." 42 U.S.C. § 1396u(a)(7).

35. Plaintiff receives community living arrangement services under the Hab Waiver.

36. Defendants are mandated to provide Early and Periodic Screening, Diagnosis, and Treatment services (EPSDT) to children under age 21 with reasonable promptness. 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)43, 1396d(a)(4)(B), 1396d(r), 1396a(a)(8), and 42 C.F.R. § 435.930(a).

37. 42 U.S.C. § 1396d(r)(5) defines EPSDT services as:

> Such other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) [42 USC 1396d(a)] of this section to correct or ameliorate defects and physical and mental illnesses and

conditions discovered by the screening services, whether or not such services are covered under the State plan.

38.   MDHHS' Medicaid Manual describes Community Living Supports (CLS) as EPSDT services.

39.   Pursuant to the contract between MDHHS, CMHPSM and LCCMH, Managed Care Rule 42 U.S.C. § 438.400(b)(4) defines reasonable promptness as within 14 days of the start date agreed upon at the person-centered planning meeting.

40.   Plaintiff has a history of behavioral and sensory integration issues that arise from his developmental disabilities.

41.   Plaintiff requires prompting and assistance in all areas of his activities of daily living, including but not limited to dressing, brushing his teeth, and taking a shower.

42.   Plaintiff needs guidance with behavioral issues, completing tasks, following rules, and doing activities independently.

43.   Plaintiff has successfully lived in the community with his mother with the assistance of community living arrangement services in the home.

44.   Since living in Livingston County, Plaintiff has been approved for 21 hours per week of community living arrangement services titled community living supports (CLS). (Exhibit A).

45.   Plaintiff was also approved for six hours per week of respite care services. (Exhibit A).

46.   On June 19, 2018, Plaintiff received a delay notice from LCCMH. The notice stated that the reason for the delay was a lack of service providers.

47.   During the delay, Plaintiff received none of his medically necessary services.

48.   Plaintiff filed a local appeal disputing the delay notice on July 26, 2018.

49.   Plaintiff's appeal was successful. Review of the claim found that the 21 hours per week of CLS and six hours per week of respite care were medically necessary, and LCCMH was directed to provide the services as quickly as possible. (Exhibit B).

50.   Plaintiff eventually received the medically necessary services sometime in October, 2018.

51.   LCCMH provided services until December 18, 2018.

52.   On December 18, 2018 Plaintiff's service provider quit for personal reasons.

53.   Without Plaintiff's service provider, Plaintiff received none of the services LCCMH deemed medically necessary.

54.     Defendant LCCMH did not find a service provider and reinstate services until approximately three months later, on or around March 20, 2019.

55.     Just over a month later, on April 29, 2019, LCCMH again sent Plaintiff a notice that they were suspending his services.

56.     The reason for the suspension notice was once again the lack of a service provider.

57.     Plaintiff's mother appealed that notice on May 20, 2019.

58.     In response to the internal appeal, LCCMH found that the services were medically necessary, and that they should provide them as soon as possible. (Exhibit C).

59.     Plaintiff started receiving the medically necessary services on June 4, 2019, over a month after LCCMH suspended the services.

60.     LCCMH once again stopped providing those medically necessary services on August 17, 2019.

61.     Plaintiff did not receive services again until over a month later, on September 23, 2019.

62.     On October 10, 2019 Plaintiff's mother asked his service provider to leave Plaintiff's home.

63. Plaintiff's mother asked the service provider to leave because the service provider was constantly on her phone, video chatted from Plaintiff's room with unknown third parties while she changed Plaintiff's clothes and did not use adequate care in transporting Plaintiff.

64. This was the first time Plaintiff's mother fired a service provider since receiving services from LCCMH.

65. Defendants had no backup provider in place to provide Plaintiff's medically necessary services in the event of service provider sickness, resignation, or termination.

66. Defendants once again failed to reinstate Plaintiff's services with reasonable promptness.

67. As of this Complaint, Defendants still have not provided Plaintiff's medically necessary services.

68. From June 2018 to November 2019, LCCMH either suspended, delayed, completely failed to provide or only partially provided Plaintiff's medically necessary services, leaving Plaintiff without medically necessary services for up to three months at a time.

69. Plaintiff and his mother made repeated requests for complete provision of services.

70.   According to LCCMH records, LCCMH promised Plaintiff and his mother on numerous occasions that they had done everything they could to obtain services for Plaintiff, but that there were none available.

71.   MDHHS contracts with CMHPSM, a Medicaid managed care organization, to provide or arrange for services for enrollees. 42 U.S.C. § 1396u-2(a)(1)(B); MCL 400.109f.

72.   CMHPSM contracts with LCCMH to provide or arrange services for Medicaid enrollees. CMHPSM is an organization statutorily required to provide and arrange for mental health services to individuals with developmental disabilities in its region.

73.   CMHPSM, as a Medicaid managed care organization is also responsible for "providing defined inpatient services, outpatient hospital services, physician services, other specified Medicaid state plan services, and additional services approved by the centers for Medicare and Medicaid services under section 1915(b)(3) of title XIX of the Social Security Act, 42 U.S.C. § 1396n." MCL 400.109f.

74.   Defendants' decision to not offer an appropriate provider reimbursement rate in the region has made it impossible for Plaintiff to receive services in the community with reasonable promptness.

75.  Defendants have underfunded a mandatory Medicaid waiver service to the degree providers cannot afford to properly serve and meet the needs of Plaintiff and other Medicaid beneficiaries in the community.

76.  Medicaid policy prohibits services from "being denied solely on preset limits of the cost, amount, scope, and duration of services. Instead, determination of the need for services shall be conducted on an individualized basis." Michigan Medicaid Provider Manual, MA/SA p 14.

77.  Medicaid pays Defendants to provide case management services to Plaintiff, as defined by 42 U.S.C. § 1396n(g)(2).

78.  These services, among other things, include making referrals so individuals can obtain needed services, linking individuals to medical providers capable of providing needed services, taking steps to ensure the care plan is effectively implemented, making sure services are being furnished and are adequate, etc.

79.  Defendant MDHHS is required to have methods of keeping itself informed of local agency adherence to the State Plan and take corrective action to ensure adherence. 42 C.F.R. § 435.903.

# COUNT I

## CAUSE OF ACTION

**(Against Defendants Gordon, Conklin, and Colaianne)**

**Violation of 42 U.S.C. § 1396a(a)(8) and 42 U.S.C. §1396a(a)(10)**

**Failure to provide medical assistance with reasonable promptness.**

80.   Plaintiff incorporates by reference paragraphs 1 through 78, as if fully set forth herein.

81.   The Social Security Act, 42 U.S.C. § 1396a(a)(8) and 42 U.S.C. §1396a(a)(10), require medical assistance to be furnished with reasonable promptness to all eligible individuals.

82.   Medical assistance "means payment of part or all of the cost of the following care and services or the care and services themselves, or both." 42 U.S.C. § 1396d(a).

83.   Medical assistance includes "community supported living arrangement services" as defined in 42 U.S.C. § 1396u, 42 U.S.C. § 1396d(a)(23). These services are provided for or arranged by the Medicaid managed care organization.

84.   Upon information and belief, Defendants subcontract out the provision of care and services defined as CLS.

85.    Defendants' contract defines providing services with "reasonable promptness" as providing services within 14 days of the start date agreed upon at the person-centered planning meaning.

86.    Plaintiff has not received medically necessary CLS services or respite services as authorized under his plan of care for periods of up to three months at a time.

87.    When Defendants do provide medically necessary CLS services or respite services, those services are only in place a short time before they are suspended.

88.    Defendants have only provided Plaintiff's medically necessary services intermittently for the past year and a half, leaving large gaps in coverage of Plaintiff's services.

89.    Defendants' decision to set and allow reimbursement rates so far below that which even the general public pay providers for the same or similar services has made it impossible for Plaintiff to receive adequate medically necessary services with reasonable promptness, in violation of 42 U.S.C. § 1396a(a)(8) and 42 U.S.C. § 1396 a(a)(10)(A).

90.   Inadequate reimbursement rates have effectively denied Plaintiff the right to medical assistance in violation of 42 U.S.C. § 1396a(a)(8) and 42 U.S.C. § 1396 a(a)(10)(A).

91.   Defendants have violated Plaintiff's clearly established rights under 42 U.S.C. § 1396a(a)(8) and 42 U.S.C. § 1396a(a)(10)(A), rights enforceable by Plaintiff pursuant to 42 U.S.C. § 1983.

92.   Defendants' actions, under color of state law, have harmed Plaintiff by depriving him of medically necessary care, disrupting and diminishing his development and mental health.

93.   The harm to Plaintiff is irreparable. He has no adequate remedy at law to prevent the continuing wrong and irreparable injury caused by Defendants' acts.

## COUNT II

## CAUSE OF ACTION

**(Against Defendants Lyon, Conklin, and Terwilliger)**

**Failure to authorize services in the amount, scope, or duration to reasonably achieve their purpose; in violation of 42 § C.F.R. 440.230(b).**

94.   Plaintiff incorporates by reference paragraphs 1 through 91, as if fully set forth herein.

95.   Under 42 C.F.R. § 440.230(b), "each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose."

96.   In the instant case, the gaps in services cause the services to be insufficient in amount, scope, and duration.

97.   Plaintiff is entitled to receive his medically necessary CLS and respite services, but either hasn't received those services to assist him with participating in community activities and prevent institutionalization or Defendants have only provided those services intermittently.

98.   Defendants' policies and procedures regarding maintaining a service provider network and service provider reimbursement have resulted in repeated failures to provide Plaintiff's medically necessary services in the amount, scope, and duration he needs.

99.   Because Defendants have suspended, delayed and failed to provide Plaintiff's CLS and respite services, he has become more isolated and segregated from society.

100.  Without medically necessary services, Plaintiff is unable to go for walks, take trips, and otherwise participate in the community, leaving him more isolated and reducing his ability to live in the most integrated setting possible.

101. Lack of support services increases Plaintiff's risk of institutionalization by reducing his ability to receive appropriate care in a community setting.

102. Plaintiff has not received services sufficient in scope to achieve the services' purpose to allow him to participate meaningfully in the community, in violation of his clearly established rights under 42 U.S.C. § 1396(a)(10)(B) and 42 C.F.R. § 440.230(b), rights enforceable by Plaintiff pursuant to 42 U.S.C. § 1983.

103. Defendants' failure to provide services in the amount Defendants deemed medically necessary has hindered Plaintiff's development towards more independence.

104. With medically necessary support services, Plaintiff learns skills like decision making, communication, hygiene, and cooking.

105. By not providing those services, Defendants harm Plaintiff's progress, reduce his independence and put him at an increased risk of segregation from the community and institutionalization.

106. Defendants' actions, under color of state law, have harmed Plaintiff by depriving him of medically necessary care, disrupting his development and mental health.

107.   The harm to Plaintiff is irreparable. He has no adequate remedy at law to prevent the continuing wrong and irreparable injury caused by Defendants' acts.

## COUNT III

## CAUSE OF ACTION

**(Against Defendants MDHHS, LCCMH, and CMHPSM)**

**Violation of the ADA - Title II, 42 U.S.C. § 12131 et seq.**

108.   Plaintiff incorporates by reference paragraphs 1 through 106 as if fully restated herein.

109.   Title II of the Americans with Disabilities Act of 1990 (Title II), 42 U.S.C. § 12131 et seq., prohibits disability-based discrimination against qualified individuals by public entities.

110.   MDHHS, CMHPSM, and LCCMH are public entities receiving federal funds to administer the Medicaid program in Michigan. 42 U.S.C. § 12131(1).

111.   Plaintiff is an individual with a disability within the meaning of the ADA. 42 U.S.C. § 12102(1). Specifically, Plaintiff is an individual with a disability whose impairment substantially limits one or more of his major life activities, has a record of the impairment, and is regarded by Defendants as having the impairment.

112.   Plaintiff is a qualified individual, as that term is defined in the ADA. 42 U.S.C. § 12131(2).  With or without reasonable modifications to the Defendants' rules, policies, or practices, Plaintiff meets the essential eligibility requirements to receive Medicaid.

113.   Defendants' failure to provide Plaintiff with medical assistance with reasonable promptness has denied him the equal benefits of the Medicaid program, and subjected him to discrimination under Medicaid, a program receiving federal financial assistance, solely because of his disability in violation of Title II.

114.   Defendants have violated Title II by failing to set rates at a level sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

115.   Defendants' failure to administer services such that Plaintiff can receive the same or similar services in the community as he can in an institution or institution-like setting violates Title II by placing him at risk of institutionalization.

116.   Defendants' violation of Plaintiff's rights under Title II has harmed Plaintiff by depriving him of medical services, thereby disrupting and diminishing his development and mental health.

117. The harm to Plaintiff is irreparable. He has no adequate remedy at law to prevent the continuing wrong and irreparable injury caused by Defendants' acts.

## COUNT IV

## CAUSE OF ACTION

**(Against Defendants MDHHS, LCCMH, and MHPSM)**

**Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

118. Plaintiff incorporates by reference paragraphs 1 through 116 as if fully restated herein.

119. Plaintiff is an individual with a disability. Specifically, Plaintiff is an individual with a disability whose impairment substantially limits one or more of his major life activities, has a record of the impairment, and is regarded by Defendants and its agents as having the impairment.

120. Plaintiff is a qualified individual with a disability. With or without reasonable modifications to Defendants' rules, policies, or practices, Plaintiff meets the essential eligibility requirements to receive Medicaid.

121. Medicaid is operated by MDHHS. Medicaid is a federally funded program. Medicaid is a program and activity administered by

MDHHS (a state department), CMHPSM (an instrumentality of the state), and LCCMH (an instrumentality of the state).

122. Defendants' failure to provide Plaintiff with medical assistance with reasonable promptness has denied him the equal benefits of the Medicaid program, and subjected him to discrimination, solely because of his disability, in violation Section 504 of the Rehabilitation Act of 1973, and its implementing regulations. 29 U.S.C. § 794.

123. Defendants have violated Section 504 by failing to contract with service providers and set rates at a level sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

124. Defendants' failure to provide Plaintiff with the full benefits of the home and community-based waiver services put him at serious risk of being institutionalized, in violation of Title II.

125. Defendants' failure to administer services such that he can receive the same or similar services in the community as he can in an institution or institution-like setting places him at serious risk of institutionalization, violating Section 504.

126. Defendants' violation of Plaintiff's rights under Section 504 has harmed Plaintiff by depriving him not only of medical services, but by disrupting and diminishing his development and mental health by isolating him at home.

127. The harm to Plaintiff is irreparable. He has no adequate remedy at law to prevent the continuing wrong and irreparable injury caused by Defendants' acts.

## REQUESTED RELIEF

Wherefore, Plaintiff respectfully requests this Court to:

A. Enter a preliminary injunction ordering Defendants to authorize payment for services in a manner that ensures services will be provided with reasonable promptness.

B. Enter a judgment ordering Defendants to authorize payment for services in a manner that ensures services will be provided with reasonable promptness.

C. Order Defendants to implement policies and procedures that ensure Plaintiff's medically necessary services are provided consistently, including having back-up providers ready in case of provider resignation, termination, leave, or sickness.

D.     Order Defendants to increase provider reimbursement rates and take other action such that provider networks can meet regional needs.

E.     Order Defendants Gordon and MDHHS to standardize CLS provider rates throughout the state at a rate which ensures services will be provided by qualified staff with reasonable promptness.

F.     Enter a judgment against Defendants in an amount consistent with damages sustained.

G.     Grant attorney's fees and costs.

H.     Grant such other relief as Plaintiff is entitled to or this court deems necessary.

Respectfully submitted,

Dated: November ___, 2019

*/s/ Simon Zagata*
Simon Zagata (P83162)
Michigan Protection & Advocacy Service, Inc.
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
(517) 487-1755